Citation Nr: 1617297 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 12-24 706 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to an initial compensable rating for ankylosing spondylitis of the left hip prior to September 18, 2012.

2. Entitlement to a rating in excess of 30 percent for a left hip replacement with residual scar (previously evaluated as ankylosing spondylitis of the left hip) from November 1, 2013, to December 10, 2015. 

3. Entitlement to a rating in excess of 50 percent for a left hip replacement with residual scar on or after December 11, 2015.

4. Entitlement to an initial compensable rating for ankylosing spondylitis of the right hip prior to December 11, 2012.

5. Entitlement to a rating in excess of 30 percent for a right hip replacement (previously evaluated as ankylosing spondylitis of the right hip) on or after February 1, 2014. 


REPRESENTATION

Veteran is represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

C. Banister, Associate Counsel


INTRODUCTION

The Veteran served on active duty from November 1982 to May 1995. This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2011 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

This matter was previously before the Board in January 2015 and November 2015, at which time the claims were remanded for additional development. The requested development was completed, and the case has been returned to the Board for further appellate action.

The Board notes that temporary 100 percent ratings were assigned to the Veteran's left and right hip disabilities following hip replacement surgeries, effective September 18, 2012, to October 31, 2013, for the left hip; and effective December 11, 2012, to January 31, 2014, for the right hip. As 100 percent is the maximum rating available for these disabilities, the issue of entitlement to higher ratings for these periods is moot.





(CONTINUED ON NEXT PAGE)
FINDINGS OF FACT

1. Prior to September 18, 2012, the Veteran's ankylosing spondylitis of the left hip was manifested by pain, limitation of motion, and arthritis established by x-ray findings. 

2. Beginning November 1, 2013, the Veteran's left hip replacement was manifested by moderately severe residuals of weakness, pain, or limitation of motion. 

3. Prior to December 11, 2012, the Veteran's ankylosing spondylitis of the right hip was manifested by pain, limitation of motion, and arthritis established by x-ray findings. 

4. Beginning February 1, 2014, the Veteran's right hip replacement was manifested by moderately severe residuals of weakness, pain, or limitation of motion. 


CONCLUSIONS OF LAW

1. Prior to September 18, 2012, the criteria for a 10 percent rating for ankylosing spondylitis of the left hip have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.71a, Diagnostic Codes 5003, 5010, 5240-5251. (2015).

2. Beginning November 1, 2013, the criteria for a 50 percent rating for residuals of a left hip replacement have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.71a, Diagnostic Code 5054 (2015).

3. Prior to December 11, 2012, the criteria for a 10 percent rating for ankylosing spondylitis of the right hip have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.71a, Diagnostic Codes 5003, 5010, 5240-5252. (2015).

4. Beginning February 1, 2014, the criteria for a 50 percent rating for residuals of a right hip replacement have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.7, 4.71a, Diagnostic Code 5054 (2015).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has a duty to notify and assist a claimant in the development of a claim. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2015).

VA must notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2015). With respect to Veteran's appeal of the initial ratings assigned to his service-connected hip disabilities, the December 2011 rating decision granted the Veteran's service connection claims, and those claims are now substantiated. Because the July 2010 notice that was provided before service connection was granted was sufficient, VA's duty to notify in this case has been satisfied as to that issue. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490-91 (2006), aff'd, 483 F.3d 1311 (Fed. Cir. 2007). 

In addition, the Board finds that the duty to assist has been satisfied. The Agency of Original Jurisdiction (AOJ) obtained the Veteran's service treatment records and all identified post-service treatment records. The Veteran initially received a VA examination in September 2010. In January 2015, the Board remanded the above-captioned claims in order to obtain any outstanding treatment records and to provide the Veteran with a more recent examination. While in remand status, the AOJ obtained updated treatment records, and a VA examination was conducted in April 2015. In November 2015, the Board again remanded the above-captioned claims in order to provide the Veteran with another VA examination in which range of motion testing was conducted. In December 2015, the Veteran received a new VA examination, which included range of motion testing and allowed for a fully informed evaluation of the disabilities at issue. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Furthermore, the Board finds that there has been substantial compliance with the Board's January 2015 and November 2015 remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

Disability ratings are determined by applying the criteria set forth in the VA Schedule of Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2015). Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating many accurately reflect the elements of disability; resolving any reasonable doubt regarding the degree of disability in favor of the claimant; where there is a questions as to which of two evaluations apply, assigning a higher of the two where the disability pictures more nearly approximates the criteria for the next higher rating; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person's ordinary activity. See 38 C.F.R. §§ 4.2, 4.3, 4.7, 4.10 (2015); see also Schafrath v. Derwinski, 1 Vet. App. 589 (1991). 

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. See Fenderson v. West, 12 Vet. App. 119, 127 (1999).

Prior to undergoing hip replacement surgeries, the Veteran's left hip disability was assigned a noncompensable rating pursuant to the criteria set forth in 38 C.F.R. § 4.71a, Diagnostic Code 5240-5251, and his right hip was assigned a noncompensable rating pursuant to the criteria set forth in 38 C.F.R. § 4.71a, Diagnostic Code 5240-5252. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27 (2015). In this case, the hyphenated diagnostic code indicates that ankylosing spondylitis, under Diagnostic Code 5240, was the service-connected disability, and limitation of motion of the hip and thigh, under Diagnostic Codes 5251 and 5252, was a residual condition. Pursuant to Diagnostic Code 5251, a maximum 10 percent rating is warranted where hip extension is limited to five degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5251. Pursuant to Diagnostic Code 5252, a 10 percent rating is warranted for hip flexion limited to 45 degrees; a 20 percent rating is warranted for hip flexion limited to 30 degrees; a 30 percent rating is warranted for hip flexion limited to 20 degrees; and a maximum 40 percent rating is warranted for hip flexion limited to 10 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5252.

Additionally, when there is a diagnosis of degenerative or traumatic arthritis established by x-ray findings, and the limitation of motion of an arthritic joint is noncompensable under the appropriate diagnostic code, a rating of 10 percent is assigned for each affected major joint or group of minor joints. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010. 

Following the temporary total disability ratings assigned for convalescence, each hip was assigned a 30 percent rating pursuant to the criteria set forth in 38 C.F.R. § 4.71a, Diagnostic Code 5054, relating to hip replacements. Beginning December 11, 2015, the rating assigned to the Veteran's service-connected left hip disability was increased to 50 percent. Under Diagnostic Code 5054, 30 percent is the minimum disability rating assigned following a hip replacement. 38 C.F.R. § 4.71a, Diagnostic Code 5054. A 50 percent rating is warranted for moderately severe residuals of weakness, pain, or limitation of motion. Id. A 70 percent rating is warranted for markedly severe residual weakness, pain, or limitation of motion following implantation of prosthesis. Id. A 90 percent rating is warranted following implantation of prosthesis with painful motion or weakness such as to require the use of crutches. Id. A maximum 100 percent rating is warranted for the year following implantation of prosthesis. Id. 

Words such as "moderate" and "marked" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. 4.6 (2015). The Rating Schedule provides guidance by defining normal range of motion of the hip as 0 to 125 degrees of flexion and 0 to 45 degrees of abduction. 38 C.F.R. § 4.71, Plate II (2015). 

A September 2009 private treatment record indicates that the Veteran reported a history of bilateral hip pain, which increased in intensity on the left side over the past six months. Range of motion testing of the left hip revealed flexion to 110 degrees, abduction to 40 degrees, and internal and external rotation to 25 degrees with significant pain on rotation. An evaluation of the right hip revealed similar pain on internal and external rotation with decreased range of motion. The treatment provider discussed the possibility of a total hip arthroplasty, but noted that the Veteran was quite young.

A January 2010 private treatment record indicates that the Veteran reported severe pain, stiffness, and achiness in both hips, which caused difficulty getting out of bed without assistance. The treatment provider noted that the Veteran had diagnoses of ankylosing spondylitis and peripheral arthritis, which affected numerous joints, including the hips. The Veteran reported that his job at Sheppard Air Force Base involved physical fitness, and he stated that his ability to exercise suffered tremendously. A physical examination revealed discomfort on range of motion of the hips on attempted flexion and rotation and a stiff gait.

During a September 2010 VA examination, the Veteran reported daily hip stiffness and pain, which was greater on the left side and worsened when stepping on the left lower extremity. He also reported increased pain throughout the day with walking and standing. The Veteran reported being able to walk about one mile and stand for about one hour before he must stop due to pain. He indicated that his hip pain did not affect his occupational or daily activities. He denied any flare-ups, surgical procedures on the hips, or use of assistive devices for ambulation. There was no evidence of instability, deformity, weakness, effusion, dislocation, swelling, heat, redness, or drainage of the hips. A physical examination revealed hips which were normal in appearance and without deformity. Range of motion testing revealed flexion to 125 degrees, extension to 30 degrees, adduction to 20 degrees, abduction to 45 degrees, external rotation to 60 degrees, and internal rotation to 40 degrees, bilaterally. There was no tenderness of the joints, increased pain with range of motion testing, or additional limitation of motion with repetitive use. X-rays from December 2008 revealed osteoarthritic changes of the left and right hips. The diagnoses included arthritis of the hips and ankylosing spondylitis. 

An October 2010 private treatment record revealed stiffness upon range of motion of the hips with pain on abduction and internal or external rotation. The treatment provider recommended a bilateral hip replacement sooner rather than later. 

A March 2011 private treatment record noted severe left hip pain and destruction with severe pain on attempted left hip abduction and internal rotation. The Veteran also reported a great deal of difficulty maneuvering stairs due to low back stiffness and left hip pain.

In January 2012, the Veteran reported significant hip pain and exhibited increased pain in left hip on abduction and stiffness on internal rotation. The treatment provider noted difficulty controlling the Veteran's overall inflammation and progression and indicated that the Veteran's treatment providers were "running out of options" to treat his ankylosing spondylitis. 

Treatment records dated April 2012 through August 2012 noted significant hip pain and stiffness, even while sleeping, and significant limitation of motion, but with flexion greater than 45 degrees and no limitation of extension.

During an October 2012 examination, the Veteran reported hip pain, stiffness, fatigability, and lack of endurance. He denied swelling or locking of the hip joint. He had left hip replacement about 3 weeks ago. His right hip flared with strenuous activities and he treated the flare up with rest and ibuprofen. Right hip flexion was to 105 degrees, with pain at 85 degrees; extension was to zero degrees; adduction was not lost beyond 10 degrees; there was no limitation of adduction or rotations such that the Veteran could not cross his legs or toe-out more than 15 degrees. Range of motion was unchanged after repetitive use. 

During an April 2015 VA examination, the Veteran reported gradually worsening bilateral hip pain since service, which eventually necessitated a bilateral hip replacement in 2012. Thereafter, the Veteran reported pain in both hips, which was greater on the right side, and difficulty with running, prolonged walking, and climbing stairs. He also reported increased pain during flare-ups, which were preceded by walking more than a couple of blocks. The examiner indicated that the Veteran did not have any functional loss or functional impairment of the joint. A physical examination revealed slight tenderness on the outer aspect of the left hip joint and a surgical scar on the lateral aspect of the left hip measuring 17 centimeters long and .8 centimeters wide and a scar on the lateral aspect of the right hip measuring 17 centimeters long and .9 centimeters wide. Neither scar was painful or unstable. Muscle strength testing was normal. There was no evidence of pain with weight bearing, atrophy, ankylosis, malunion or nonunion of the femur, flail hip joint, or leg length discrepancy. Range of motion testing was abnormal or outside of the normal range; however, the examiner did not provide the limits of motion, in terms of degrees. There was no additional limitation in range of motion after three repetitions, and the examiner indicated that pain, weakness, fatigability, or incoordination did not significantly limit functional ability during flare-ups or with repeated use over a period of time. However, the examiner later indicated that the Veteran's bilateral hip pain interfered with sitting and standing and affected his ability to work in that it caused difficulty running, climbing stairs, and walking more than two or three blocks. 

During a December 2015 VA examination, the Veteran reported increased bilateral hip pain since the April 2015 VA examination, which worsened with climbing stairs, bending forward, and sitting for more than 15 minutes. He reported increased pain during flare-ups, which were precipitated by walking more than a couple of blocks. The Veteran reported stopping to rest and avoiding stairs in order to relieve his pain during flare-ups. He denied using any assistive devices. A physical examination revealed pain to palpation on the anterior hips, bilaterally, and a surgical scar on the lateral aspect of the left hip which was 17 centimeters long and .8 centimeters wide, which was neither painful nor unstable. The diagnosis was bilateral osteoarthritis of the hips. Muscle strength testing was normal. Range of motion testing revealed flexion to 115, extension to 25, abduction to 35, adduction to 15 degrees, external rotation to 50 degrees, and internal rotation to 30 degrees, bilaterally. Pain was noted on all ranges of motion, but the examiner indicated that there was no additional functional loss due to pain or with repeated use. There was no evidence of pain with weight bearing, atrophy, ankylosis, malunion or nonunion of the femur, flail hip joint, or leg length discrepancy. The examiner was unable to say without resorting to speculation whether pain, weakness, fatigability, or incoordination significantly limited functional ability during flare-ups or with repeated use over time. However, the examiner indicated that the examination results were medically consistent with the Veteran's statements regarding functional loss during flare-ups and with repetitive use over time. The examiner characterized the residuals of the Veteran's left hip replacement as "moderately severe . . . weakness, pain, or limitation of motion," but did not address the residuals of the Veteran's right hip replacement. The examiner indicated that the Veteran's bilateral hip disabilities affected his ability to work in that restrictions or accommodations should be made in order to avoid prolonged standing, stair climbing, stooping, squatting, or excessive bending forward. It was also noted that accommodations such as a higher chair or firm cushions with arm rests to assist with standing would be helpful.

I. Left Hip

As previously noted, prior to September 18, 2012, the Veteran's left hip disability has been assigned a noncompensable rating based on limitation of motion. The record shows that prior to September 18, 2012, the Veteran had limitation of motion caused by his left hip disability, but that extension was not limited to 5 degrees; flexion was not limited to 45 degrees or less; abduction, adduction, and rotation were not limited so that motion was lost beyond 10 degrees or the Veteran could not cross his legs or toe-out more than 15 degrees, respectively. Based on the foregoing, the Board finds that the limitation of motion caused by the Veteran's left hip disability prior to September 18, 2012, warrants a noncompensable rating. See 38 C.F.R. § 4.71a, Diagnostic Codes 5251, 5252. However, the record shows a diagnosis of left hip arthritis confirmed by x-rays for the entire period on appeal prior to September 18, 2012. Thus, a minimum 10 percent disability rating is warranted prior to September 18, 2012. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010. 

In making this determination, the Board has considered whether there is any additional functional loss not contemplated by the 10 percent rating assigned prior to September 18, 2012. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015); see also Deluca v. Brown, 8 Vet. App. 202, 206 (1995); Mitchell v. Shinseki, 25 Vet. App. 32, 33 (2011). The record shows that the Veteran experienced pain; however, it did not result in additional functional impairment in terms of range of motion. See Mitchell, 25 Vet. App. at 33. Accordingly, the Board finds that a rating in excess of 10 percent is not warranted prior to September 18, 2012, based on additional functional loss. Id. 

From November 1, 2013, to December 10, 2015, the Veteran's left hip disability has been assigned a 30 percent rating for residuals of a left hip replacement. Beginning December 11, 2015, a 50 percent rating was assigned based on moderately severe residuals of a left hip replacement. See 38 C.F.R. § 4.71a, Diagnostic Code 5054.

A review of the record reveals that beginning November 1, 2013, the Veteran's residuals of a left hip replacement included limitation of motion, pain, and stiffness, which caused difficulty climbing stairs, bending forward, and standing, walking, or sitting for more than about 15 minutes. Moreover, the December 2015 VA examiner characterized the Veteran's residuals of a left hip replacement as "moderately severe," and there is no indication in the record that his left hip disability was less severe for any distinct period between the Veteran's hip replacement surgery and December 11, 2015. As such, the Board finds that as of November 1, 2013, the Veteran's left hip disability more nearly approximated moderately severe residuals of weakness, pain, or limitation of motion. Accordingly, a 50 percent disability rating is warranted beginning November 1, 2013. See 38 C.F.R. § 4.71a, Diagnostic Code 5054. Of note, range of motion testing at the most recent VA examination revealed 10 degrees or less loss of motion in each plane of motion of the hip, bilaterally. The Board does not associate this with markedly severe limitation of motion, nor is the pain described by the Veteran and its effects described by the examiner demonstrative of markedly severe pain. The record also shows no additional functional impairment of the joint, normal muscle strength, and the ability to ambulate without assistance. As such, the Board finds that a rating in excess of 50 percent for the Veteran's left hip replacement is not warranted for any distinct period on appeal. See id.; see also Fenderson, 12 Vet. App. at 127.

The Board has considered whether the Veteran's service-connected left hip disability warrants higher ratings under an alternative diagnostic code; however, the record does not show any findings that would warrant a higher rating under an alternate diagnostic code relating to the hip. See 38 C.F.R. § 4.71a, Diagnostic Codes 5250, 5253, 5054 (2015). 

The Board has also considered whether the Veteran's scar on the left hip warrants a compensable rating. A review of the record reveals one surgical scar measuring 19 centimeters long and .8 centimeters wide, which was neither painful nor unstable. Thus, a separate rating for a scar on the left hip is not warranted. See 38 C.F.R. § 4.118, Diagnostic Code 7804 (2015). 

II. Right Hip

As previously noted, prior to December 11, 2012, the Veteran's right hip disability has been assigned a noncompensable rating based on limitation of motion. The record shows that prior to September 18, 2012, the Veteran had limitation of motion caused by his right hip disability, but that extension was not limited to 5 degrees; flexion was not limited to 45 degrees or less; abduction, adduction, and rotation were not limited so that motion was lost beyond 10 degrees or the Veteran could not cross his legs or toe-out more than 15 degrees, respectively. Based on the foregoing, the Board finds that the limitation of motion caused by the Veteran's right hip disability prior to December 11, 2012, warrants a noncompensable rating. See 38 C.F.R. § 4.71a, Diagnostic Codes 5251, 5252. However, as the record shows a diagnosis of right hip arthritis confirmed by x-rays for the entire period on appeal prior to December 11, 2012, a minimum 10 percent disability rating is warranted. See 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010. 

In making this determination, the Board has considered whether there is any additional functional loss not contemplated by the 10 percent rating assigned prior to December 11, 2012. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2015); see also Deluca v. Brown, 8 Vet. App. 202, 206 (1995); Mitchell v. Shinseki, 25 Vet. App. 32, 33 (2011). The record shows that the Veteran experienced pain; however, it did not result in additional functional impairment in terms of range of motion. See Mitchell, 25 Vet. App. at 33. Accordingly, the Board finds that a rating in excess of 10 percent is not warranted prior to December 11, 2012, based on additional functional loss. Id. 

Beginning February 1, 2014, the Veteran's right hip disability has been assigned a 30 percent rating because he underwent a right hip replacement. A review of the record reveals that beginning February 1, 2014, the Veteran's residuals of a right hip replacement included limitation of motion, pain, and stiffness, which caused difficulty climbing stairs, bending forward, and standing, walking, or sitting for more than about 15 minutes. Additionally, the December 2015 VA examiner characterized the Veteran's residuals of a left hip replacement as "moderately severe," but did not address the Veteran's residuals of a right hip replacement. Notably, during the December 2015 VA examination, the Veteran reported greater pain on the right side. As such, the Board finds that as of February 1, 2014, the Veteran's right hip disability more nearly approximated moderately severe residuals of weakness, pain, or limitation of motion. Accordingly, a 50 percent disability rating is warranted beginning February 1, 2014. See 38 C.F.R. § 4.71a, Diagnostic Code 5054. Of note, range of motion testing at the most recent VA examination revealed 10 degrees or less loss of motion in each plane of motion of the hip, bilaterally. The Board does not associate this with markedly severe limitation of motion, nor is the pain described by the Veteran and its effects described by the examiner demonstrative of markedly severe pain. The record also shows no additional functional impairment of the joint, normal muscle strength, and the ability to ambulate without assistance. As such, the Board finds that a rating in excess of 50 percent for the Veteran's right hip replacement is not warranted for any distinct period on appeal. See id.; see also Fenderson, 12 Vet. App. at 127.

The Board has considered whether the Veteran's service-connected right hip disability warrants higher ratings under an alternative diagnostic code; however, the record does not show any findings that would warrant a higher rating under an alternate diagnostic code relating to the hip. See 38 C.F.R. § 4.71a, Diagnostic Codes 5250, 5253, 5054 (2015). 

The Board has also considered whether the Veteran's scar on the right hip warrants a compensable rating. A review of the record reveals one surgical scar measuring 19 centimeters long and .9 centimeters wide, which was neither painful nor unstable. Thus, a separate rating for a scar on the right hip is not warranted. See 38 C.F.R. § 4.118, Diagnostic Code 7804. 

III. Extraschedular Consideration

Generally, evaluating a disability using the corresponding or analogous diagnostic codes contained in the Rating Schedule is sufficient. See 38 C.F.R. §§ 4.20, 4.27 (2015). Because the ratings are averages, an assigned rating may not completely account for each individual veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability. In exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating. 38 C.F.R. § 3.321(b) (2015).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluation for that service-connected disability is inadequate. Id.; see Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd, 572 F.3d 1366 (2009). If the criteria reasonably describe the veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. 

As found above, the Veteran's service-connected left and right hip disabilities have been manifested by symptoms of pain, stiffness, and limitation of motion, which resulted in difficulty climbing stairs, bending forward, and standing, walking, or sitting for prolonged periods of time. When comparing this disability picture with the symptoms contemplated by the rating criteria, the Board finds that the Veteran's disability picture is not so unusual or exceptional in nature as to render the already assigned schedular ratings inadequate, as the criteria under which the Veteran's service-connected disabilities are evaluated specifically contemplate the level of occupational and social impairment caused by his service-connected hip disabilities. See 38 C.F.R. §§ 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5010, 5251, 5252, 5054. 

Additionally, the Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362, 1366 (Fed. Cir. 2014). The Veteran has been in receipt of a 100 percent combined disability rating since September 18, 2012, which fully accounts for any combined effects of the disabilities. Prior to that period, the evidence of record, including lay statements, does not indicate any effect caused by a combination of the disabilities on appeal and any other service-connected disabilities that is not already specifically contemplated by the individually assigned ratings. As such, further discussion of an extraschedular rating based upon the combined effect of multiple conditions is not necessary.

Finally, the Board notes that a claim of entitlement to a total disability rating based on individual unemployability (TDIU) is part and parcel of an increased rating claim when such claim is raised by the record. See Rice v. Shinseki, 22 Vet. App. 447, 454-55 (2009). In this case, the record shows that the Veteran's hip disabilities affect his ability to work in that they cause difficulty climbing stairs, bending forward, and walking, sitting, and standing for prolonged periods of time. However, the Veteran has not asserted, and the record does not show, that he is unemployable due to his service-connected disabilities. Indeed, a March 2015 VA social work note indicates that the Veteran works full-time as an instructor at an Air Force base. Accordingly, the Board finds that a claim of entitlement to TDIU has not been raised as part of the above-captioned appeal. See id.

In reaching this decision, the Board considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against assigning disability ratings in excess of those already assigned, the doctrine is not for application. See Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). 
ORDER

An initial rating of 10 percent for ankylosing spondylitis of the left hip is granted prior to September 18, 2012, subject to the applicable laws and regulations governing the payment of VA monetary benefits.

A rating of 50 percent for a left hip replacement is granted from November 1, 2013, to December 10, 2015, subject to the applicable laws and regulations governing the payment of VA monetary benefits.

A rating in excess of 50 percent for a left hip replacement on or after December 11, 2015, is denied.

An initial rating of 10 percent for ankylosing spondylitis of the right hip is granted prior to December 11, 2012, subject to the applicable laws and regulations governing the payment of VA monetary benefits.

A rating of 50 percent for a right hip replacement is granted beginning February 1, 2014, subject to the applicable laws and regulations governing the payment of VA monetary benefits.



____________________________________________
Nathan Kroes
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs